**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MILA FAZLOVIC                                      )
                                                   )
      Plaintiff,                              )
                                                   )
         vs.                             )
                                                   )    Plaintiff Demands
DD LOGISTICS, INC., an Illinois corporation,       )    Trial by Jury
DEJAN DERIKONJIC, an individual                    )
                                                   )
      Defendants.                             )

**COMPLAINT AT LAW**

NOW COMES MILA FAZLOVIC, by and through her attorneys, KREAMER LAW GROUP, LLC, and for her Complaint at Law against the Defendants, DD LOGISTICS, INC., an Illinois corporation and DEJAN DERIKONJIC, an individual, states as follows:

**PARTIES**

1.     Plaintiff Mila Fazlovic is a citizen of Muskego, WI, and at all times relevant was an employee of DD Logistics, Inc. and Dejan Derikonjic, located in Bolingbrook, IL.

2.     Defendant DD Logistics, Inc., is and was at all relevant times a business incorporated in the state of Illinois, and located at 679 E. South Frontage Rd., Bolingbrook, IL 60440.

3.     Defendant Dejan Derikonjic is a citizen of Hinsdale/Burr Ridge, IL, and was at all relevant times the Owner, Agent, and President of DD Logistics, Inc., located at 679 E. South Frontage Rd., Bolingbrook, IL 60440.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over Illinois state law claims pursuant to 28 U.S.C. §1367.

**Exhibit 1**

## PROCEDURAL REQUIREMENTS

5.      Plaintiff has fulfilled all conditions precedent to this action's institution under Title VII of the Civil Rights Act of 1964 and as amended by the Civil Right Act of 1991, and the Lily Ledbetter Fair Pay Act of 2009.  Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (hereinafter, "EEOC") and has received a Notice of Right to Sue concerning the same.  *See Exhibit A attached hereto.*

## RELEVANT FACTS

6.      Plaintiff is a single mother of a young daughter. Plaintiff lives in Wisconsin, but works in Illinois, as the wages are higher, and she is the only one supporting her minor daughter. For these reasons, Plaintiff drives 90 miles every day to work in order to take care of her daughter.

7.      In or around late March 2019, Plaintiff and Defendant Dejan Derikonjic (hereinafter, "Derikonjic") met. Throughout their discussions while getting to know one another, Plaintiff explained the above to Defendant.

8.      On or about March 26, 2019, Plaintiff and Defendant Derikonjic began a personal relationship.

9.      In or around October 2019, Plaintiff commenced her employment as a paid employee with Defendant DD Logistics, Inc. at the request of its owner, Defendant Derikonjic.  The Plaintiff reported to and worked directly under Defendant Derikonjic, as the Owner, President, and Agent of DD Logistics.  The Plaintiff's position with the company was Corporate Manager where her job duties included managing the safety department, the accounting department, the HR department, overseeing employee work schedules and time off, and managing dispatching.  The Plaintiff's employment agreement called for Defendant to pay Plaintiff for 40 hours per week plus overtime and accrued vacation time for the work she performed for DD Logistics.

10.     Plaintiff's employment agreement with Defendant DD Logistics provided that Plaintiff would make $1,000.00 per week for 40 hours of work but with promotions and added responsibilities, Plaintiff's pay

rose to $2,250.00 per week for 40 hours of work in the final months of her employment. The Plaintiff received her DD Logistics' company paychecks from Defendant Derikonjic.

11.     From approximately October 16, 2019, to October 30, 2020, Plaintiff was paid as an individual employee of Defendant DD Logistics. During this time, Plaintiff was pressured and ultimately forced by Defendant Derikonjic to open her own limited liability company, in order to receive her pay checks. From approximately, June 4, 2021, to October 21, 2022, in addition to being paid as an individual, Plaintiff was also paid through her LLC; MGF Safety Consulting, LLC, a Wisconsin limited liability company.

12.     Due to the mismanagement of resources on the part of Defendant Derikonjic as the Owner/President of DD Logistics, Plaintiff from time to time was paid from Global Expedited, LLC. A completely unrelated and now shuttered company, owned by Defendant Derikonjic's father. During her employment with DD Logistics, Plaintiff was paid by Global Expedited, LLC approximately six times, four checks made payable to her as an individual and two checks made payable to her LLC.

13.     All of the employees working at Defendant DD Logistics were forced to be 1099 employees, including Plaintiff. However, while not traditionally treated by the Defendants as a W-2 employee, Plaintiff was never free from control and direction over the performance of her work for Defendant DD Logistics. At all relevant times, the Plaintiff was directed as to the time, location, and job duties to which she was to perform.

14.     At no time was Plaintiff allowed by Defendant DD Logistics to perform work outside the usual course of business of Defendant DD Logistics.

15.     At no relevant time during the course of Plaintiff's employment was she able to create her own schedule. In fact, Plaintiff was not even allowed time off for vacation or otherwise without her commitment to work during her time out of the office.

16.     At no time during Plaintiff's employment with DD Logistics did she have a proprietary interest in any independent business, nor did she perform services or any other business. Plaintiff was wholly dependent upon Defendant DD Logistics for any and all work and services she performed.

17.     Plaintiff began her employment in the accounting department, but was soon promoted to Executive Director, overseeing accounting – including accounts receivable and payroll, safety, the ELD team, legal matters, and insurance claims department. Plaintiff handled all state and federal audits and in a two-year period of time Plaintiff responded to and passed seven audits. In addition, Plaintiff managed all equipment loans and Defendant's scheduling.

18.     During this time Plaintiff never received her promised two weeks paid vacation time, nor a single bonus.

19.     Plaintiff was only allowed time off for vacation or other needs if she agreed to work while she was out of the office, whether on vacation or not.

20.     Plaintiff also worked many nights because she was always on call, consistently working between 50 and 70 hours a week and never being paid overtime.

21.     During this time, in or around January of 2022, Plaintiff and Defendant Derikonjic's relationship began to degrade, as Defendant Derikonjic became increasingly aggressive toward Plaintiff. On or about January 8, 2022, Plaintiff removed all of her belongings from Defendant Derikonjic's apartment. Defendant Derikonjic began threatening Plaintiff with her job, as well as threatening to harm her physically. In addition, Defendant Derikonjic's threats against Plaintiff's job were especially harmful, as Plaintiff is a single mother and needs to work.

22.     Additionally, Defendant Derikonjic made sexually explicit statements to Plaintiff while at work and outside of work, including sending sexually explicit text messages. These sexually explicit statements included, but are not limited to, repeatedly making suggestions and requests for sex, repeatedly making suggestions and requests for oral sex, repeatedly making suggestions and requests for group sex, repeatedly making sexually suggestive jokes, innuendos, and comments. In addition, on multiple occasions in the winter and spring of 2022, Defendant Derikonjic grabbed the Plaintiff's butt, her breasts, and force kissed Plaintiff all of which was unwanted by the Plaintiff. These actions occurred when Plaintiff was alone with the Defendant at work during working hours, at the Defendant's apartment, and sometimes while in public

4

when they were on a date. Defendant continually and repeatedly made comments about Plaintiff's physical appearance and body, along with grooming statements gaslighting Plaintiff by telling her he was the only person she could trust and that he was the only person that could protect her and her daughter. All of these actions done by the Defendant to the Plaintiff caused Plaintiff great fear and stress.

23.     Defendant Derikonjic repeatedly made demands that Plaintiff leave the office with him alone, repeatedly demanded that Plaintiff stay and work late hours with him alone, repeatedly made demands that Plaintiff travel with him alone, and repeatedly made demands that Plaintiff go out to dinner with him alone.

24.     Defendant Derikonjic continued the pattern of abusive, gaslighting by repeatedly telling Plaintiff that she was getting old and running out of opportunities to have a husband and that she should take what she can get, reminding her that she was alone.

25.     During their personal time and especially in the workplace, Defendant Derikonjic repeatedly touched Plaintiff inappropriately and sent her harassing and explicit text messages.

26.     Defendant repeatedly called Plaintiff a, "whore" and a "slut." Defendant repeatedly threatened to kill or hurt Plaintiff saying he was, "coming with 50 crazy guys," to her friend's condo.

27.     Due to the threats against her person and her job, Plaintiff ended the personal relationship with Defendant Derikonjic on or about April 27, 2022. However, Plaintiff continued to work for Defendant, as she is a single mother and depended on the income from her job. Additionally, Defendant Derikonjic threatened to prevent her from working anywhere in and around Chicago, repeatedly telling Plaintiff she would never find work anywhere else because he would prevent it.

28.     Prior to Plaintiff breaking off the personal relationship, Plaintiff and Defendant Derikonjic had two trips planned, that were already paid for. On or about May 24, 2022, Plaintiff and Defendant Derikonjic were to travel to the Dominican Republic. As Plaintiff had broken up with Defendant, she did not show up to the airport. For the next two days, Defendant called and threatened Plaintiff with her job and well-being, until she finally acquiesced and joined Defendant on or around the following Tuesday, when Defendant Derikonjic purchased her a new ticket to the Dominican Republic.

29.     Additionally, Plaintiff and Defendant Derikonjic had planned a trip to Serbia on or around June 26, 2022. Again, since Plaintiff had ended the relationship, she no longer wanted to go on the trip. When Plaintiff told Defendant Derikonjic she no longer wanted to go, he threatened Plaintiff with an ultimatum: either go on the trip with him or lose her job. Defendant Derikonjic also told Plaintiff that if she went on the trip with him that he would leave her alone.

30.      During their trip to Serbia Defendant Derikonjic became mentally and physically abusive toward Plaintiff and began mentally abusing Plaintiff's daughter continuously telling the house full of people they were staying with just to pretend that Plaintiff's daughter did not even exist. The abuse got so bad, Plaintiff had to pack up her and her daughter's belongings and separate themselves from Defendant Derikonjic and his children for the rest of the trip. After Plaintiff's attempt to extricate herself from Defendant Derikonjic, he continued to follow and threaten Plaintiff for the remainder of the trip.

31.     During the flight home on or about July 31, 2022, Plaintiff and Defendant Derikonjic were on the same flight and Defendant Derikonjic threatened Plaintiff, telling her he would, "Make her life hell."

32.      Upon returning to work, Defendant Derikonjic made good on his threat, harassing Plaintiff by calling her outrageous and unspeakable names, threatening to fire her, and threatening to no longer pay her for the work she continued to perform.

33.     Defendant Derikonjic continued his violent threatening behavior, at one point, in August of 2022, Defendant Derikonjic threatened to have Plaintiff killed, telling her if he was going to kill her, he'd hire a black person to kill her and get rid of her and her car in the bushes. At this time, Plaintiff was in fear for her life and drove to the Bolingbrook Police Department, where she filed a police report. The police in-turn called Defendant Derikonjic.

34.     Plaintiff endured the threats and abuse while she sought other employment. On or about October 3, 2023, Plaintiff emailed Defendant Derikonjic her resignation letter, giving two weeks' notice. Defendant Derikonjic proceeded to call Plaintiff and yell and scream at her in response to her resignation.

35.     At one point in approximately October 2022, Defendant stated, "I fuck everything of yours alive and dead." And "I fuck everything of yours buried and not buried." These threats were in reference to Plaintiff's father that was killed in the war and to her unborn baby whom she lost when she suffered a miscarriage. Defendant also stated, "I'll fuck your mother."  At this time, Defendant Derikonjic grabbed Plaintiff around her neck and pulled her hair and threatened to kill Plaintiff and would burn both Plaintiff and the Plaintiff's minor daughter in a car.

36.     After Plaintiff resigned, on or about the afternoon of October 13, 2022, the day before her final day of her two-week notice period, Defendant locked Plaintiff out of everything, and forced her to leave the office, effectively terminating her. Plaintiff emailed Defendant Derikonjic regarding her return of all office materials provided to her by Defendant DD Logistics, her outstanding pay and being paid out for vacation time accrued. Plaintiff explained that she had been there for three years and deserved to be paid out for her accrued time the same as everyone else.

37.     Defendant Derikonjic not only refused to pay Plaintiff for her rightfully accrued vacation time but cut some of Plaintiff's hours resulting in Plaintiff losing wages for time she had worked, including not paying her for her last day, and docking her pay for days and hours previously worked.

38.     Plaintiff filed for and received two temporary orders of protection in both Wisconsin and Illinois, due to Defendant Derikonjic's harassing, menacing, and threatening behavior.

39.     Even after Plaintiff obtained the orders of protection, Defendant Derikonjic continued his threats and harassment against Plaintiff.

40.     On or about November 8, 2022, Defendant made false statements and lied to Plaintiff and others when he accused her of stealing his daughter's purse. Plaintiff purchased the Louis Vuitton bag on or about September 15, 2021 with a gift card given to her by Defendant Derikonjic on or about August 21, 2021, and had the receipt; however, since it looked like a bag belonging to Defendant's daughter he claimed Plaintiff stole it.

41.     On or about November 13, 2022, Plaintiff traveled to Illinois to attend the baptism of her best friend's child. This event was to be a small event with only close family and friends invited. Defendant Derikonjic was not invited, nor was he made aware of this event by Plaintiff. Prior to this, on or about November 11, 2022, Defendant Derikonjic emailed Plaintiff and stated that he knew where she would be located, giving her the address of the church where the baptism would take place and the name of the restaurant they would have lunch at after. Additionally, Defendant Derikonjic threatened to send a guy to the restaurant to take the purse he claimed was his daughter's. Defendant knew Plaintiff's daughter would be with her at the baptism but threatened Plaintiff anyway. Plaintiff had to have her friend's ex-husband walk she and her daughter out to their car, to ensure they were safe.

42.     Plaintiff called the Muskego, WI Police Department and informed an officer of the threats and that she had a temporary order of protection against the Defendant. Plaintiff filed another police report and the police contacted Defendant ordering him to stay away from Plaintiff.

43.     Even after Plaintiff had received the Wisconsin temporary order of protection, and Defendant had been contacted on multiple occasions by various police departments, the threats and harassment on the part of Defendant Derikonjic continued. On or about April 27, 2023, Plaintiff was having lunch with a friend at a restaurant in Hodgkins, IL. Once done with lunch, Plaintiff and her friend exited the restaurant. Plaintiff's friend was smoking a cigarette, when Plaintiff noticed Defendant Derikonjic driving towards them in his Mercedes G Wagon. Plaintiff immediately told her friend to get in the car so they could get out of there.

44.     Plaintiff pulled out of the parking lot and once she was on the street realized that Defendant Derikonjic had waited for her and was now following her. Plaintiff took many side streets and many turns in an attempt to get Defendant Derikonjic to stop following her. However, once Plaintiff made it onto the freeway, she noticed that not only was Defendant Derikonjic following her, but one of his friends was following her as well. At this time, Defendant attempted to cause the Plaintiff to crash her vehicle or drive off the roadway where the Defendant and his friend drove erratically at high rates of speed and cut off the Plaintiff's vehicle in her lane of traffic.

45.     Defendant Derikonjic and his friend "sandwiched" Plaintiff in between their vehicles and continued this menacing behavior for approximately 25 minutes. During this time, Plaintiff became so afraid she called 911 and worked with a dispatcher to have them locate her.

46.     Once the dispatcher was able to locate Plaintiff, police officers were dispatched to her location. It was only when Defendant Derikonjic and his friend noticed the sirens and lights of the police cars that they finally stopped following Plaintiff.

47.      Plaintiff was forced, due to her fear, to pull over into the nearest parking lot. At that time, she spoke to Countryside Police Department, Patrol Officer, Brendan Gleespen and filed a police report with him (police report #2023-0003577). Additionally, Plaintiff filed a report with the Hodgkins Police Department. Officer Johnson took her statement and issued police report #23-0267. In or around May 2023, Plaintiff was granted a temporary order of protection in Illinois against Defendant Derikonjic, due to his threatening, menacing, and terrifying actions against Plaintiff.

48.     In addition to falsely accusing Plaintiff of stealing his daughter's purse, on or about September 30, 2022, Defendant Derikonjic falsely accused Plaintiff over email of obtaining a loan for DD Logistics, for her own personal use and benefit, as well as stealing money from the company. Defendant Derikonjic made this wholly false accusation in front of Defendant's father and in the office with multiple people present, after Plaintiff rebuffed his continual, repugnant sexual advances and ignored him as he made multiple horrifying and disgusting threats and comments to Plaintiff.

49.     Plaintiff was afraid for her life. Plaintiff was so scared she could not work and tried to seek an extension of the existing temporary protection order against Defendant Derikonjic. Plaintiff also had to seek out a therapist and receive counseling for her on-going anxiety and fear due to Defendant Derikonjic's actions.

## COUNT I – AGAINST DD LOGISTICS, INC.
## SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

50.     The Plaintiff adopts and incorporates the allegations contained in paragraphs 1-49 above as if set forth in this paragraph 50 herein.

9

51.     By the direct acts of its supervisors, Defendant, through its knowledge of, participation in, and failure to respond to acts of sexual harassment, and differential treatment based upon sex, discriminated against Plaintiff in the terms, conditions, and privileges of employment and/or in interfered with her work opportunities because of her sex, female, in violation of Title VII of the Civil Rights Act.

52.     By Defendant's knowledge of and failure to respond to acts of sexual harassment and differential treatment based upon sex, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment and/or in interfered with her work opportunities because her sex, female, in violation of Title VII of the Civil Rights Act.

53.     Defendant, by and through its agents, managers, supervisors, or employees, condoned and knew or should have known of the unwelcome and inappropriate behaviors, offensive conduct, inappropriate gestures, comments, and physical conduct, which created an intimidating, hostile, or offensive environment, and failed to take any appropriate remedial measures, despite numerous complaints and reports by Plaintiff of the same.

54.     Male employees at Defendant's were not treated the same and were treated more favorably than Plaintiff, in that males were not subject to sexual discrimination and harassment.

55.     The preceding acts and conduct by Defendant were unwelcome to Plaintiff and unreasonably interfered with her work performance, interfered with her work opportunities, and seriously affected her physical and psychological well-being.

56.     Due to its actions, Defendant condoned and ratified the aforementioned unlawful acts.

57.     Plaintiff was subjected to adverse employment actions due to her refusal to consent to acts of sexual discrimination and harassment due to her complaints of sexual discrimination and harassment and due to Defendant's refusal to act to remedy the same.

58.     By the acts mentioned above, Defendant discriminated against and harassed Plaintiff in the terms, conditions, and privileges of employment and/or in interfering with her work opportunities because of her sex, female, in violation of in violation of Title VII of the Civil Rights Act.  The Defendant can offer no

legitimate reason for such differential treatment, and any proffered reason is a pretext for the Defendant's illegal motivation.

59. Defendant's wrongful acts, by and through its agents, were deliberate, intentional, willful, malicious, outrageous and in total disregard and reckless indifference to Plaintiff's civil rights under Title VII of the Civil Rights Act.

60. As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of future pay, vacation pay, and other incidentals and benefits of employment; severe emotional distress, stress related illnesses including but not limited to anxiety, humiliation, and embarrassment.

WHEREFORE, Plaintiff MILA FAZLOVIC respectfully requests judgment against Defendant, in an amount that will fully compensate her for her injuries and damages for Defendant's violation of Plaintiff's rights under Title VII of the Civil Rights Act, and award Plaintiff damages for loss of wages, past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, court costs, reasonable attorneys' fees, compensatory damages, punitive damages, and any other damages allowed under the Title VII of the Civil Rights Act all in a sum greater than $75,000.00, as well as any other further relief the Court deems just and appropriate.

## COUNT II – AGAINST DD LOGISTICS, INC.
## RETALIATION IN VIOLATION OF TITLE VII

61. Plaintiff repeats and reasserts the allegations of Paragraphs 1 through 49 along with all subparagraphs contained therein as this paragraph 61 as though fully set forth herein.

62. Plaintiff has a right to a hostile-free and discrimination-free work environment.

63. Plaintiff attempted to exercise that right through complaints to Defendant regarding the inappropriate behavior as outlined above, all of which resulted in total inaction for Plaintiff's situation and retaliation.

64.     After Plaintiff's complaints, the Defendants failed to effectively address or stop the discriminatory and harassing acts Plaintiff was subjected to, and no acts were taken to enforce any policy of anti-discrimination or harassment. The acts, in fact, continued.

65.     After Plaintiff complained, she was treated less favorably than other employees, suffered from adverse employment actions, all in retaliation for her complaints and opposition to unlawful conduct under Title VII of the Civil Rights Act.

66.     After Defendant knew of Plaintiff's complaints, Defendant interfered with her work opportunities, threatened to fire her, forced her to travel out of the country by threatening her job and physical safety, all in violation of Title VII of the Civil Rights Act.

67.     The Defendants actions and retaliation toward Plaintiff was in violation of the clear mandate of public policy of maintaining a hostile-free and discrimination-free work environment.

68.     As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of future pay, vacation pay, and other incidentals and benefits of employment; severe emotional distress, stress related illnesses including but not limited to anxiety; humiliation and embarrassment.

69.     The acts mentioned above of Defendants were willful, wanton, malicious, and malicious and in total disregard and reckless indifference to Plaintiff's rights under Title VII of the Civil Rights Act.

        WHEREFORE, Plaintiff, MILA FAZLOVIC, respectfully requests judgment against Defendants, in an amount that will fully compensate her for her injuries and damages for Defendants' violation of Plaintiff's rights under Title VII of the Civil Rights Act, and award Plaintiff damages for loss of wages, past and future, vacation pay, severe emotional distress, pain and suffering, embarrassment, humiliation, court costs, reasonable attorneys' fees, compensatory damages, punitive damages, ad any other damages allowed under Title VII of the Civil Rights Act, all in a sum greater than $75,000.00, as well as any other further relief the Court deems just and appropriate.

**COUNT III – AGAINST DD LOGISTICS, INC.**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

70.    Plaintiff repeats and reasserts the allegations of Paragraphs 1 through 49, along with all subparagraphs contained therein as this Paragraph 70 as though fully set forth herein.

71.    By the above actions, but not limited to the same, Plaintiff was subject to pervasive and continuous unwelcome harassment at the hands of Defendant, in the terms, conditions, and privileges of employment and/or in interfering with her work opportunities because of her gender, female, in violation of in violation of Title VII of the Civil Rights Act.

72.    Defendant knew or should have known through Plaintiff's complaints of the harassment above and failed to take prompt remedial action to stop and correct the same.

73.    By the above actions but not limited to the same, Defendant created an intimidating, hostile and offensive work environment, which unreasonably interfered with Plaintiff's work performance, work opportunities, and seriously affected her psychological well-being.

74.    Male employees were not subjected to the same or similar treatment.

75.    Due to their inaction, Defendant condoned and ratified the aforementioned unlawful acts.

76.    Defendant's wrongful acts were deliberate, intentional, willful, wanton, and malicious and in total disregard and reckless indifference to Plaintiff's rights under Title VII of the Civil Rights Act.

77.    As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe financial damages, including but not limited to loss of future pay, vacation pay, and other incidentals and benefits of employment; severe emotional distress, stress related illnesses including but not limited to anxiety; humiliation and embarrassment.

WHEREFORE, Plaintiff, MILA FAZLOVIC, respectfully requests judgment against Defendants, in an amount that will fully compensate her for her injuries and damages for Defendants' violation of Plaintiff's rights under Title VII of the Civil Rights Act, and award Plaintiff damages for loss of wages, severe emotional distress, pain and suffering, embarrassment, humiliation, court costs, reasonable attorneys' fees, compensatory damages, punitive damages, and any other damages allowed under Title VII of the Civil

Rights Act, all in a sum greater than $50,000.00, as well as any other further relief the Court deems just and appropriate.

**COUNT IV – AGAINST DEJAN DERIKONJIC**
**ASSAULT**

78.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 above as if set forth in this paragraph 78 herein.

79.    The aforesaid offensive actions of Defendant Derikonjic placed Plaintiff in reasonable apprehension of receiving a battery where Defendant Derikonjic grabbed Plaintiff around her neck, pulled her hair, and threatened to kill Plaintiff and kidnap and kill Plaintiff's minor daughter, attempted to run her off the road while following the Plaintiff at a high rate of speed on the roadway and abruptly cut her off, and unwantedly touched the Plaintiff's butt, breasts and forced kiss the Plaintiff, and threatened to have the Plaintiff killed, telling her if he was going to kill her, he'd "hire a black person to kill you." At this time, Plaintiff was in fear for her life and drove to the Bolingbrook Police Department, where she filed a police report. The police in-turn called Defendant Derikonjic.

80.    On several dates between January 2022 and May 2023, the Plaintiff was in actual fear for her life and the life of her minor daughter due to the actions of Defendant Derikonjic.  Moreover, on or about November 11, 2022, and April 27, 2023, Plaintiff was forced to call the police and file multiple police reports. This was not the first time Plaintiff had to call the police out of fear for her safety.

81.    Defendant's offensive actions were deliberate, intentional, willful, malicious, outrageous, and done with an evil motive.

82.    Plaintiff has suffered significant damages as a result of the above assault, including loss of employment, income, benefits, and other incidentals of employment, severe mental and emotional distress, physical harm, embarrassment, and humiliation.

WHEREFORE, Plaintiff, MILA FAZLOVIC, respectfully requests judgment against Defendant DEJAN DERIKONJIC in an amount that will fully compensate her for injuries and damages of the past and future, including but not limited to lost wages of the past and future, lost employee benefits, attorney

fees and costs, punitive damages and prejudgment interest, emotional distress, insult, embarrassment, and humiliation, as well as any other further relief as the Court deems just and appropriate.

## COUNT V – AGAINST DD LOGISTICS, INC.
## COMMON LAW *RESPONDEAT SUPERIOR* LIABILITY FOR ASSAULT

83.     The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49  and 78-82 above as if set forth in this paragraph 83 herein.

84.     The aforesaid offensive actions of Defendant Derikonjic placed Plaintiff in reasonable apprehension of receiving a battery where Defendant Derikonjic grabbed Plaintiff around her neck , pulled her hair, and threatened to kill Plaintiff and kidnap and kill Plaintiff's minor daughter, attempted to run her off the road while following the Plaintiff at a high rate of speed on the roadway and abruptly cut her off, and unwantedly touched the Plaintiff's butt, breasts and forced kiss the Plaintiff, and threatened to have the Plaintiff killed, telling her if he was going to kill her, he'd "hire a black person to kill you." At this time, Plaintiff was in fear for her life and drove to the Bolingbrook Police Department, where she filed a police report. The police in-turn called Defendant Derikonjic.

85.     That the aforesaid offensive actions of Defendant Derikonjic were taken while Defendant Derikonjic was acting as the Owner, Agent, and President for Defendant DD Logistics and acting within the scope of his employment as the Owner, Agent, and President for Defendant DD Logistics.

86.     On or about November 11, 2022, and April 27, 2023, Plaintiff was in actual fear for her life due to the actions of Defendant Derikonjic, causing her to call the police and file multiple police reports. This was not the first time Plaintiff had to call the police out of fear for her safety.

87.     That Defendant Derikonjic's offensive actions were deliberate, intentional, willful, malicious, outrageous, and done with an evil motive.

88.     That Defendant Derikonjic's unlawful and unprovoked actions constituted assault.

89.     That Defendant DD Logistics is liable for the negligent, willful, malicious, or even criminal acts of its Owner/Agent/President committed in the course of employment.

90.     That Defendant DD Logistics is liable for the acts of its Owner/Agent/President, Defendant Derikonjic, that assaulted Plaintiff throughout her tenure as an employee of DD Logistics and on or about April 27, 2023.

91.     Plaintiff has suffered significant damages as a result of the above assault, including loss of employment, income, benefits, and other incidentals of employment, severe mental and emotional distress, physical harm, embarrassment, and humiliation.

WHEREFORE, Plaintiff, MILA FAZLOVIC, respectfully requests judgment against Defendant DEJAN DERIKONJIC in an amount that will fully compensate her for injuries and damages of the past and future, including but not limited to lost wages of the past and future, lost employee benefits, attorney fees and costs, punitive damages and prejudgment interest, emotional distress, insult, embarrassment, and humiliation, as well as any other further relief as the Court deems just and appropriate.

## COUNT VI – AGAINST DEJAN DERIKONJIC
## BATTERY

92.     Plaintiff repeats and reasserts the allegations of paragraphs 1-42 and 78-91 as this paragraph 92 as if though fully set forth herein.

93.     The aforesaid offensive actions of Defendant Dejan Derikonjic, were done with a desire to cause a touching that was reasonably offensive and in fact did result in a touching that was reasonably offensive where Defendant Derikonjic grabbed Plaintiff around her neck , pulled her hair, and threatened to kill Plaintiff and kidnap and kill Plaintiff's minor daughter, attempted to run her off the road while following the Plaintiff at a high rate of speed on the roadway and abruptly cut her off, and unwantedly touched the Plaintiff's butt, breasts and forced kiss the Plaintiff during work hours at the office,  and threatened to have the Plaintiff killed, telling her if he was going to kill her, he'd "hire a black person to kill you."

94.     Defendant's offensive actions were deliberate, intentional, willful, malicious, outrageous, and done with an evil motive.

95.     Plaintiff has suffered significant damages as a result of the above battery, including loss of

employment, income, benefits, and other incidentals of employment, severe mental and emotional

distress, physical harm, embarrassment, and humiliation.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant Dejan

Derikonjic, in an amount that will fully compensate her for injuries and damages of the past and

future, including but not limited to lost wages of the past and future, lost employee benefits,

attorney fees and costs, punitive damages and prejudgment interest, emotional distress, insult,

embarrassment and humiliation, as well as any other further relief as the Court deems just and

appropriate.

### COUNT VII – AGAINST DD LOGISTICS, INC.
### COMMON LAW *RESPONDEAT SUPERIOR* LIABILITY FOR BATTERY

96.     The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 and 78-

95 above as if set forth in this paragraph 96 herein.

97.     That the aforesaid offensive actions of Defendant Derikonjic were taken while Defendant

Derikonjic was acting as the Owner, Agent, and President for Defendant DD Logistics and acting

within the scope of his employment as the Owner, Agent, and President for Defendant DD

Logistics.

98.     That Defendant Derikonjic's offensive actions were deliberate, intentional, willful,

malicious, outrageous, and done with an evil motive.

99.     That Defendant Derikonjic's unlawful and unprovoked actions constituted battery.

100.    That Defendant DD Logistics is liable for the negligent, willful, malicious, or even criminal

acts of its Owner/Agent/President committed in the course of employment.

101.    That Defendant DD Logistics is liable for the acts of its Owner/Agent/President, Defendant

Derikonjic, that assaulted Plaintiff throughout her tenure as an employee of DD Logistics.

17

102.     Plaintiff has suffered significant damages as a result of the above battery, including loss of

employment, income, benefits, and other incidentals of employment, severe mental and emotional

distress, physical harm, embarrassment, and humiliation.

WHEREFORE, Plaintiff, MILA FAZLOVIC, respectfully requests judgment against

Defendant DEJAN DERIKONJIC in an amount that will fully compensate her for injuries and

damages of the past and future, including but not limited to lost wages of the past and future, lost

employee benefits, attorney fees and costs, punitive damages and prejudgment interest, emotional

distress, insult, embarrassment, and humiliation, as well as any other further relief as the Court

deems just and appropriate.

## COUNT VIII – AGAINST DEJAN DERIKONJIC
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103.     The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49  and 78-102 of

this Complaint above, as though fully set forth in paragraph 103 herein.

104.     At all times relevant, Defendant Derikonjic knew or should have known that Plaintiff did not

consent to the harassment, discrimination, assault, and battery he subjected her to.

105.     At all times relevant, Defendant Derikonjic committed extreme and outrageous acts of harassment,

discrimination, assault, and battery against Plaintiff.

106.     At all times relevant, Defendant Derikonjic committed extreme and outrageous acts by participating

in a toxic culture of harassment, discrimination, assault, and battery against Plaintiff on the premises.

107.     At all times relevant, Defendant Derikonjic intentionally rebuffed and otherwise did willfully and

wantonly fail to comply with  all local, common law, and federal laws against ongoing harassment,

discrimination, assault, and battery.

108.     Defendant Derikonjic engaged in extreme and outrageous conduct by engaging verbal abuse,

harassment, discrimination, assault, and battery aimed at Plaintiff, despite those actions being taken in direct

violation of local, common law, and federal laws, detrimentally effecting Plaintiff's mental health and

substantially interfering with Plaintiff's work and ability to perform her job, and her personal safety and well-being.

109. Defendant acted with willful malice and knowledge of or with conscious disregard of the harm that would be inflicted upon Plaintiff by their harassment, discrimination, assault, and battery.

110. The Defendant's conduct caused the Plaintiff to suffer fright, grief, worry, shame, humiliation, and severe or extreme emotional distress.

WHEREFORE, Plaintiff, MILA FAZLOVIC, demands judgment against the Defendant Derikonjic for compensatory damages in an amount in excess of $50,000.00 and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for all such and further relief as the Court deems to be fair and just.

## COUNT IX - AGAINST DEFENDANT DERIKONJIC
## DEFAMATION

111. The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 of this Complaint above, as though fully set forth in paragraph 111 herein.

112. On or about September 15, 2021, Plaintiff purchased a purse from Louis Vuitton, in part with a gift card given to the Plaintiff by the Defendant, on or about August 21, 2021.

113. On or about September 30, 2022, Defendant accused Plaintiff of stealing his daughter's purse. The very same Louis Vuitton that Plaintiff had purchased in part with the gift card given to her by the Defendant.

114. Plaintiff did not steal the luxury purse or any property from Defendant or Defendant's daughter.

115. This accusation was false, and Defendant Derikonjic knew it was false.

116. Defendant Derikonjic continued to tell others, including Plaintiff's boyfriend that Plaintiff had stolen the luxury purse.

117. On or about September 30, 2022, Defendant again falsely accused Plaintiff of committing a fraudulent act, by taking out a loan for DD Logistics for her own personal use and stealing money in front of Defendant's father at the office.

118.    This accusation was false, at no time did Plaintiff ever obtain a loan behalf of Defendant DD Logistics, nor could she have ever done so, as she was not an owner, member, manager, officer, or employee of the Defendant during this time. Nor did Plaintiff ever steal money from the company.

119.    At no time did Plaintiff ever falsify documents or sign hers or anyone else's name to any document of any kind or steal money.

120.    Defendant continued to falsely accuse Plaintiff of fraudulently taking out a loan for the business, so that she could use it for her personal use and stealing money in retaliation for her continual rebuffing of his sexual advances, harassment, and discrimination.

121.    Plaintiff's reputation and good name has been wrongfully damaged as a result of Defendant Derikonjic's actions against her.

122.    To state a claim for defamation under Illinois law, a plaintiff must allege "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Green v. Rogers* 234 Ill.2d 478, 491, 917 N.E.2d 450, 459 (2009).

123.    A defamatory statement is one that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Id*.

124.    If a statement's harm is obvious and apparent on its face, it is defamatory per se. *Id*.

125.    In Illinois, only five categories of statements are considered defamatory per se: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks the ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

126.    If a statement is considered defamatory per se, it is presumed that the Plaintiff suffered damages as a result of the statement. *Tuite v. Corbitt*, 224 Ill.2d 490, 501, 866 N.E.2d 114, 121 (2006).

127.    The statements made by Defendant Derikonjic set forth above are false and defamatory, and defamatory per se in that they impute that Plaintiff committed a crime.

128.    At all relevant times, Defendant Derikonjic knew that his statements were false or acted in reckless disregard of whether they were true or false.  At all relevant times, Defendant Derikonjic acted with actual malice.

129.    At all relevant times, Defendant Derikonjic in making the false and malicious statement about Plaintiff stealing the purse and committing a fraudulent act was acting on his own behalf and on behalf of Defendant DD Logistics.

130.    As a proximate result of the defamatory statements made by Defendant Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, Plaintiff suffered substantial damages and injuries including but not limited to damage and injury to the reputation.

131.    The foregoing defamatory statements were made by Defendant Derikonjic acting on his own behalf and on behalf of Defendant DD Logistics with the knowledge of their falsity and with actual malice, with the intent of inflicting suffering and damages on Plaintiff, so as to justify an award of punitive damages.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant DD Logistics and Defendant Derikonjic in the sum in excess of $50,000.00 plus interest, court costs, and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for such and further relief as the Court deems fair and just.

## COUNT X -  AGAINST DEFENDANT DERIKONJIC
## FALSE LIGHT – INVASION OF PRIVACY

132.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 of this Complaint above, as though fully set forth in paragraph 132 herein.

133.    The statements made by the Defendant set forth above placed the Plaintiff in a false light before the public in that it falsely accused Plaintiff of being a thief of a purse and falsely accused Plaintiff of not being worthy of trust by other prospective employers, co-workers, family, and friends.

134.    The false light of being accused of being a thief of a luxury purse in which the Defendant Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, placed the Plaintiff would be highly offensive to a reasonable person.

135.    The statements made by the Defendant set forth above placed the Plaintiff in a false light before the public in that it falsely accused Plaintiff of committing a fraudulent act, by opening an account and falsifying documents and falsely accused Plaintiff of not being worthy of trust by other prospective employers, co-workers, family, and friends.

136.    The false light of being accused of committing a fraudulent act, by falsifying account documents in which the Defendant Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, placed the Plaintiff would be highly offensive to a reasonable person.

137.    At all relevant times, Defendant  Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, knew that his statements were false or acted in reckless disregard of whether they were true or false.  At all relevant times, Defendant  Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, acted with actual malice.

138.    As a proximate result of the Defendant Derikonjic, acting on his own behalf and on behalf of Defendant DD Logistics, foregoing defamatory statements, Plaintiff suffered injuries including but not limited to damage and injury to her reputation.

139.    The foregoing defamatory statements were made by the Defendants with the knowledge of their falsity and with actual malice, so as to justify an award of punitive damages.

Wherefore, Plaintiff prays that judgment be entered in her favor and against the Defendants in the sum in excess of $50,000.00 plus interest, court costs, and for exemplary damages in an amount that will serve to punish the Defendants and deter the Defendants from similar conduct and for their costs and expenses and for such and further relief as the Court deems fair and just.

## COUNT XI – AGAINST ALL DEFENDANTS
## FAIR LABOR AND STANDARDS ACT

140.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 of this Complaint above, as though fully set forth in paragraph 140 herein.

141.    At all material times hereto, Defendants were the "employer" of Plaintiff as defined in the FLSA, 29 U.S.C. §203(d), the IMWL and the IWCPA, 820 ILCS §115/2.

142.    At all material times hereto, Plaintiff was employed by Defendants as an "employee" within the meaning of §3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1) and within the meaning of the IMWL and the IWCPA, 820 ILCS §115/1*et. seq.*

143.    Plaintiff worked for the Defendants within the past three years.

144.    The Plaintiff worked for the Defendant overseeing accounting – including accounts receivable and payroll, safety, the ELD team, legal matters, and insurance claims departments. Plaintiff performed all state and federal audits and in a two-year period of time Plaintiff responded to and passed seven audits. In addition, Plaintiff managed all equipment loads and Defendant's scheduling

145.    The Plaintiff was paid on what was purported to be a salary basis.

146.    The Plaintiff however was not exempt from the overtime provisions of the FLSA or the IMWL.

147.    The Plaintiff performed her job responsibilities for the Defendants in the State of Illinois.

148.    The Plaintiff regularly worked between 50 and 70 hours per week for the Defendants.  She, however, was not paid overtime premiums as required by the law.

149.    For one example, during the week ending on July 15, 2022, the Plaintiff was paid a salary of $2,000.00 (approximately $50.00 per hour).  The Plaintiff worked approximately 60 hours.  Thus, the Plaintiff should have received an overtime premium of time-and-a-half or an additional $25.00 for each hour worked over 40 hours during the workweek.  As such, the Plaintiff was underpaid approximately $1,500.00 ($75.00 for an additional 20 hours worked) in overtime wages during that week.

150.    The individual Defendant has encouraged, permitted, and required the Plaintiff to work without properly paying the Plaintiff for all the time worked including the last two last pay periods where the

Defendant deliberately failed to pay the Plaintiff for all time worked. In addition to refusing to pay Plaintiff for two-weeks accrued vacation time in an approximate amount of $4,500.00. Plaintiff had never received paid vacation time for her first or second year of employment at Defendant DD Logistics.

151.    By willfully misclassifying the Plaintiff, the Defendant received benefits in the form of extra hours worked without overtime compensation.

152.    The Defendant failed to record the actual number of hours worked by the Plaintiff.

153.    Therefore, the reasonable estimate of the Plaintiff as to the number of hours they worked are presumed as accurate and true.

154.    At all relevant times, Defendants employed and continued to employ Plaintiff within the meaning of the FLSA.

155.    Under the FLSA, Plaintiff was entitled to be paid at the overtime rate by Defendant for each hour worked in excess of 40 hours each work week at one and one-half times their regular rate.

156.    Defendants willfully misclassified the Plaintiff.

157.    This resulted in employees, including the Plaintiff being paid at a rate less than one and one-half times her regular rate of pay for hours worked over forty in a work week, in violation of the FLSA.

158.    Upon information and belief, the Defendants' practices were not based upon Defendants' review of any policy or publication of the United States Department of Labor and therefore was willful and deliberate.

159.    Due to the Defendants' violations of the FLSA, the Plaintiff is entitled to recover from the Defendants her unpaid compensation, liquidated damages, reasonable attorney fees, and the costs of this action, pursuant to 29 U.S.C. §216(b).

WHEREFORE, the Plaintiff respectfully requests the following relief, individually and on behalf of similarly situated employees:

A.  Certification of a Class of similarly situated Plaintiffs;

B.  A Declaratory judgment that Defendants willfully violated the provisions of the FLSA as to the Plaintiff and the Class.

C.  Compensation in the amount of the owed wages for all time worked by Plaintiff and the Class;

D.  An additional amount equal as liquidated damages;

E.  Prejudgment interest.;

F.  A judgment to Plaintiff for reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b); and

G.  Such other and further relief as this Court deems appropriate and just.

## COUNT XII – AGAINST ALL DEFENDANTS
## ILLINOIS MINIMUM WAGE LAW

160.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-48 and 140-159 of this Complaint above, as though fully set forth in paragraph 160 herein.

161.    Under the IMWL, the Plaintiff was entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each work week at one and one-half times her regular rate.

162.    Plaintiff was regularly permitted, encouraged and/or required to work in excess of 40 hours per week but was not compensated at the required one and one-half times her regular rate for such overtime work.

163.    This resulted in employee being paid at a rate less than one and one-half times her regular rate of pay for hours worked over forty in a work week, in violation of the IMWL.

164.    By failing to pay for the time worked including overtime compensation due to the Plaintiff, Defendants willfully, knowingly, and/or recklessly violated the IMWL which requires overtime compensation of one and one-half times the regular rate to be paid.

WHEREFORE, the Plaintiff respectfully requests the following relief, individually and on behalf of similarly situated employees:

A.  A declaratory judgment that Defendants violated the minimum wage provisions of the IMWL as to the Plaintiff;

B.  A declaratory judgment that Defendants' violations of the IMWL were willful;

C.  A judgment to Plaintiff in the amount of unpaid wages;

D.  A judgment to the Plaintiff of punitive damages as provided by IMWL;

E.  A judgment to Plaintiff and those similarly situated of reasonable attorneys' fees and costs incurred in filing this action; and

F.  Such other and further relief as this Court deems appropriate and just.

### COUNT XIII – ALL DEFENDANTS
### ILLINOIS WAGE PAYMENT AND COLLECTIONS ACT

165.    The Plaintiff adopts and incorporates the allegations set forth in paragraphs 1-49 and 140-164 of this Complaint above, as though fully set forth in paragraph 165 herein.

166.    The foregoing actions of Defendants constitute violations of the Illinois Wage Payment and Collections Act (IWPCA).  Defendants' actions were willful and not in good faith.

167.    This count arises from Defendants' violations of the IWCPA, 820 ILCS 115.  820 ILCS §115/4 provides in part that "all wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

168.    The Defendants failed to pay out all actually worked time and accrued vacation at the time of separation as required by the IWCPA.

WHEREFORE, the Plaintiff respectfully requests the following relief, individually and on behalf of similarly situated employees:

A.  A declaratory judgment that Defendants violated the minimum wage provisions of the IWPCA as to the Plaintiff;

B.  A declaratory judgment that Defendants' violations of the IWPCA were willful;

C.  A judgment to Plaintiff in the amount of unpaid wages and vacation pay;

D.  A judgment to the Plaintiff of punitive damages as provided by IWPCA;

E.  A judgment to Plaintiff and those similarly situated of reasonable attorneys' fees and costs incurred in filing this action; and

F.  Such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

**MILA FAZLOVIC**


By: /s/ John C. Kreamer /s/

One of her Attorneys


John C. Kreamer
Kreamer Law Group, LLC
1100 E. Warrenville Rd., Ste.135
Naperville, Illinois 60563
T. 630- 857-3609
F. 630-597-9532
Firm #45899
Email: jckreamer@kreamerlawgroup.com

27